<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOPE E. NOAH, | : | |
|  | : | CIVIL ACTION NO. 05-1066 (MLC) |
| Plaintiff, | : | |
|  | : | **MEMORANDUM OPINION** |
| v. | : | |
|  | : | |
| JO ANNE BARNHART, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
|  | : | |
| Defendant. | : | |

<u>**COOPER, District Judge**</u>

The plaintiff, Hope E. Noah ("Noah"), applies for judicial review of the final decision of the defendant, Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), denying Noah's claims for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

<u>**BACKGROUND**</u>

Noah applied for DIB on October 9, 2002. (Admin. R. ("A.R.") at 65-67.) Noah alleged that she had been disabled since December 31, 1999, due to diabetes with peripheral neuropathy, sight problems, and leukemia. (<u>Id.</u> at 74; <u>see</u> Compl., at ¶ 4 (stating Noah "suffers from obesity, diabetes with peripheral neuropathy, and acute leukemia").)

Noah's claim was denied on December 24, 2002, and she filed for reconsideration on February 7, 2003.  (A.R. at 31-36.) Noah's claims were denied upon reconsideration on March 10, 2003. (Id. at 37-39.)  Noah requested a hearing before an administrative law judge on April 30, 2003.  (Id. at 42.) Administrative Law Judge Katherine C. Edgell ("ALJ") conducted a hearing on May 18, 2004.  (Id. at 49-52.)  The ALJ issued a decision on June 24, 2004, finding that Noah was not disabled within the meaning of the Social Security Act ("SSA") at any time through the date of the decision.  (Id. at 25-26.)  The ALJ found that while Noah's obesity and diabetes with peripheral neuropathy affecting the lower regions constituted a severe impairment, at all material times she "ha[d] the residual functional capacity to lift light objects, stand and walk for short periods of time and sit as needed throughout the course of an eight hour workday." (Id. at 25.)

Noah submitted a request to the Appeals Council on July 26, 2004, to review the ALJ's decision.  (Id. at 16-17.)  The Appeals Council denied the request on December 27, 2004.  (Id. at 5-7.) Accordingly, the ALJ's decision was adopted as a final decision of the Commissioner.

## DISCUSSION

### I.    Standard of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. §

405(g).  The Court may affirm, modify, or reverse the decision of
the Commissioner, with or without remanding the cause for a
rehearing.  Id.  However, this judicial review is limited.  The
Commissioner's findings of fact, if supported by substantial
evidence, are conclusive.  Id.  Thus, the Court examines the
record "to determine whether substantial evidence supported the
ALJ's findings."  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.
2003).  "Substantial evidence" in the context of a social
security matter means "more than a mere scintilla," i.e., such
evidence as "a reasonable mind might accept as adequate to
support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401
(1971).  This standard is "deferential and includes deference to
inferences drawn from the facts if they, in turn, are supported
by substantial evidence."  Schaudeck v. Comm'r of Soc. Sec.
Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Court, despite the deference given to administrative
decisions, "retain[s] a responsibility to scrutinize the entire
record and to reverse or remand if the . . . decision is not
supported by substantial evidence."  Smith v. Califano, 637 F.2d
968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the
> substantially test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence—particularly certain types
> of evidence (e.g., that offered by treating
> physicians)—or if it really constitutes not evidence but
> mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). "That the record contains evidence supporting a different conclusion does not undermine" the Commissioner's decision if the record contains substantial evidence supporting that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995). The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 434-35.

## II. Determining Eligibility for Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled." In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful

activity."  20 C.F.R. § 404.1520(a)(4)(I).  If the claimant is so
engaged, the ALJ will find that the claimant is not disabled and
the application for disability benefits will be denied.  Id. §
404.1520(b).  If the claimant is not employed, the ALJ will
consider the medical severity and duration of the claimant's
impairment or combination of impairments in the second step.  Id.
§ 404.1520(a)(4)(ii).  A "severe impairment" is one that
significantly limits the claimant's physical or mental ability to
do basic work activities, including, inter alia, (1) sitting,
lifting, and speaking, (2) responding appropriately to
supervision and co-workers, and (3) understanding, carrying out,
and remembering instructions.  Id. §§ 404.1521(a)-(b),
416.921(a)-(b).  A claimant who does not meet this requirement is
not disabled.  Id. § 404.1520(c).  In essence, the second step
requires a threshold-level demonstration of severe impairment
without consideration of the claimant's age, education, and work
experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

    If the claimant shows severity, the ALJ then moves to the
third step to determine whether the impairment is listed in
section 20, part 404, subpart P, appendix 1 of the Code of
Federal Regulations ("CFR").  20 C.F.R. § 404.1520(a)(4)(iii).
If the impairment meets or equals a listed impairment, the
claimant is presumed to be disabled, and the evaluation ends at
this stage.  Id. § 404.1520(d).  If the impairment does not meet

5

or equal a listed impairment, the ALJ proceeds to step four.  Id.
§ 404.1520(a)(4).

The ALJ must determine at step four whether the impairment
prevents the claimant from returning to the work that the
claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  If
the claimant can resume the former occupation, the claimant will
not be considered disabled.  Id.  If the claimant cannot resume
previous work, the ALJ moves to step five and considers the
claimant's ability to perform other work that is available in the
national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e).  This
inquiry requires the ALJ to consider the claimant's residual
functional capacity ("RFC"), age, education, and past work
experience.  Id.  A claimant will be found disabled if the
claimant is unable to adjust to any other work in the national
economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the
first four steps of the evaluation process.  Plummer v. Apfel,
186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this
burden, the burden shifts to the Commissioner in step five to
show that the claimant has the transferable skills that would
allow him or her to engage in alternative substantial gainful
employment.  Id.

## III. Analysis

Although Noah generally asserts that the Commissioner's finding is not supported by substantial evidence and that the ALJ's decision contains errors of law, she makes three claims in support of her argument that this Court should remand the case to the Commissioner.  Noah argues that the ALJ erred by failing to (1) accord adequate weight to the opinion and assessment of her treating sources; (2) analyze the nonexertional limitations in determining her ability to do past work; and (3) analyze her subjective complaints in accordance with appropriate legal standards.  (Pl. Br., at 1.)

The ALJ, in determining whether a claimant is entitled to DIB, "must consider all evidence and give some reasons for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429.  An ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.  An ALJ is not required to "undertake an exhaustive discussion of all the evidence." Hernandez v. Comm'r of Soc. Sec., 89 Fed.Appx. 771, 773-74 (3d Cir. 2004).  The ALJ is required, however, "to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and caselaw." Fargnoli v.

_Massanari_, 247 F.3d 34, 42 (3d Cir. 2001).  The ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." _Plummer_, 186 F.3d at 429.  This policy allows the Court to properly review the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether the ALJ's decision is supported by substantial evidence.  _Cotter_, 642 F.2d at 705.  Without an indication as to what evidence the ALJ considered or rejected, the Court "cannot tell if significant probative evidence was credited or simply ignored."  _Id._

### A.   The ALJ Accorded Adequate Weight to the Opinion and Assessment of Noah's Treating Sources

Noah contends that the ALJ should have given controlling weight to her treating physicians' conclusions that she had a less than sedentary RFC.  (Pl. Br., at 11-16.)  Noah argues that the assessments by Jack F. Tohme, M.D., and Emanuel Haber, DPM, as to her RFC are supported by the record.  (_Id._ at 12.)  Dr. Tohme, an endocrinologist, completed a diabetes mellitus impairment questionnaire on November 20, 2003, and identified findings of, _inter alia_, bilateral lower extremity peripheral neuropathies.  (A.R. at 277-78, 282.)  Dr. Tohme stated that during an eight-hour workday, Noah could only (1) sit for a total of three hours, and (2) stand/walk for a total of two hours.  (_Id._ at 280.)  Also, Dr. Tohme indicated that Noah would (1) be unable to sit continuously in a work setting, and (2) have to get

8

up and move around approximately every hour for five to fifteen
minutes.  (Id.)  Dr. Tohme also states that Noah's experiences
with pain and fatigue would "frequently" interfere with her
attention and concentration.  (Id. at 281.)  He further estimates
that Noah would likely miss work approximately two days per week.
(Id.)  Dr. Tohme bases these conclusions on Noah's "history of
complaints physically and emotionally [at] office visits, phone
calls and hospitalizations."  (Id. at 291.)

     Dr. Haber, a podiatrist treating Noah since 2000, completed
a lower extremities impairment questionnaire on November 21,
2003, in which he diagnoses her with diabetic neuropathy.  (Id.
at 283.)  Dr. Haber stated that Noah's prognosis was "not good,"
and he "expect[s] [her] to have [a] progressive inability to
stand or walk for any prolonged period of time."  (Id.)  Dr.
Haber posited that during an eight-hour workday, Noah could only
(1) sit for a total of four hours, and (2) stand/walk for a total
of "0-1" hours.  (Id. at 286.)  He did not indicate that it would
be necessary or medically recommended for Noah not to sit
continuously in a work setting.  (Id.)  Dr. Haber, similar to Dr.
Tohme, also states that Noah's experiences with pain and fatigue
would "frequently" interfere with her attention and
concentration.  (Id. at 288.)  Dr. Haber bases this determination
on Noah "seem[ing] incoherent overall."  (Id.)  Dr. Haber also
states that Noah will have to take unscheduled breaks

approximately twice an hour for an average of ten minutes during the workday.  (Id. at 289.)  He further estimates that Noah will be absent from work more than three times a month because of her impairments.  (Id.)

Noah contends that the RFC assessments by Dr. Tohme and Dr. Haber are also supported by medical evidence in the record. Specifically, Noah points out that (1) a July 12, 2000 report from Dov Rand, M.D., "shows, after both a physical examination and an electrodiagnostic study were performed, . . . severe diabetic peripheral neuropathy affecting both motor and sensory fibers," and (2) a neurological examination on April 27, 2001 by James Shammas, M.D., "confirmed that . . . Noah has diabetic polyneuropathy which results in 'disabling dysethesias'."  (Pl. Br., at 12-13; A.R. at 119-20, 125-26.)  Noah also notes that Dr. Shammas indicated that Noah "really has fairly significant problems of her chronic diabetic polyneuropathy."  (Pl. Br., at 13; A.R. at 126.)

The ALJ found that Noah suffered from the following medically determinable severe impairments: (1) obesity, and (2) diabetes with peripheral neuropathy affecting the lower extremities.  (A.R. at 25.)  These findings were extracted from (1) Dr. Shammas's April 27, 2001 report, (2) Dr. Tohme's November 20, 2003 diabetes questionnaire, and (3) Dr. Haber's November 21, 2003, lower extremities impairment questionnaire.  (Id. at 24.)

The ALJ found no other severe impairments.  (Id. at 22.)
Although Dr. Ligresti diagnosed Noah with chronic lymphocytic
leukemia, the ALJ noted that "no significant findings or
resultant limitations have been reported to arise relative
thereto[]."  (Id.)

     The ALJ determined that Noah, despite her impairments,
"retains the ability to perform sedentary work activity."  (Id.
at 24.)  The ALJ noted that "although prolonged periods of
standing and walking are prevented by the peripheral neuropathy
affecting [Noah's] legs, she remains able to engage in these
activities for shorter periods of time inherent in work of a
sedentary nature."  (Id.)  The ALJ also explained that there were
no positive findings "to show that any limitations have been
imposed on [Noah's] ability to perform the light lifting and
prolonged sitting required by sedentary work."  (Id.)  The ALJ
determined that the opinions of Dr. Tohme and Dr. Haber —
"report[ing] . . . greater limitations . . . on [Noah's] ability
to sit" — would not be given great consideration because "neither
of the treating sources provided significant positive findings
that would explain the degree of limitation reported."  (Id.)
The Court finds that the ALJ properly accorded less-than-
controlling weight to Noah's physicians' conclusions that she had
a less than sedentary RFC.

In deciding whether a claimant is disabled, the SSA
"review[s] all of the medical findings and other evidence that
support a medical source's statement that [a claimant is]
disabled."  20 C.F.R. § 404.1527(e)(1).  Merely because a medical
source states that a claimant is "disabled" or "unable to work",
does not necessarily mean that the SSA will determine that the
claimant is disabled.  Id.  A treating physician's opinion on the
nature and severity of a claimant's impairments will generally be
given deference, and it will be given controlling weight if it is
(1) well supported by clinical and diagnostic techniques, and (2)
consistent with other substantial evidence in the record.  Id. §§
404.1527(d)(2), 416.927(d)(2).

The ALJ is required to review all of the medical findings
and other evidence presented in support of a physician's opinion
that a plaintiff is totally disabled.  Adorno v, Shalala, 40 F.3d
43, 48 (3d Cir. 1994).  In rejecting a treating physician's
testimony, an ALJ may not (1) "make speculative inferences from
medical reports;" (2) rely on the ALJ's "own expertise against
that of a physician who presents competent medical evidence;" or
(3) "reject evidence for no reason or for the wrong reason."
Plummer, 186 F.3d at 429.  Thus, an ALJ may not reject a treating
physician's medical opinion testimony based solely on the ALJ's
"own credibility judgments, speculation or lay opinion."  Morales
v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  If, after

considering all of the relevant evidence, an ALJ decides to credit other evidence over a treating physician's testimony, the reason for doing so must be explained.  Plummer, 186 F.3d at 429. An ALJ may only outright reject the medical judgment and opinion testimony of a treating physician if the opinion is contradicted by medical evidence in the record.  Id.

The ALJ is required to set forth the reasons for a decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d. Cir. 2000).  This does not mean the ALJ is required "to use particular language or adhere to a particular format in conducting his analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  The record and any explanation of findings however, must be sufficiently developed as to permit for meaningful judicial review.  Id.

An opinion that is not consistent with the record as a whole is accorded less weight.  20 C.F.R. § 404.1527(d)(4).  Here, the ALJ accepted the findings from Dr. Tohme and Dr. Haber that Noah had peripheral neuropathy that affected her lower extremities. The ALJ also accepted Dr. Tohme's conclusion that Noah's impairment would limit her from standing or walking for more than two hours per day.  (A.R. at 22-24.)  However, the ALJ properly noted that neither Dr. Tohme nor Dr. Haber provided positive medical findings regarding their assessments of Noah's inability to sit.  Therefore, the ALJ did not give their assessments "great consideration."  (Id. at 24.)

13

Dr. Tohme stated that he based his assessment on Noah's history of complaints physically and emotionally. (Id. at 281). Noah also testified that she could sit for several hours at a time, and that she regularly saw movies with her husband, sometimes even "three and four movies in one day." (Id. at 349, 354.) Noah testified that she reads for approximately two or three hours a day. (Id. at 351.) Also, the ALJ noted that Dr. Haber's statement that Noah could sit for only three hours in an eight-hour day was contradicted by his statement that Noah could sit continuously. (Id. at 24.) The ALJ correctly weighed the treating physicians' opinions without giving them controlling weight because they were unsubstantiated by the medical evidence of record.

Noah's contention that the ALJ erred by (1) failing to review the factors set forth at 20 C.F.R. § 404.1527(d), and (2) selectively evaluating the evidence, also lacks merit. First, although the ALJ is required to provide the reasons for a decision, the ALJ did not have to use particular language or adhere to a particular format in conducting the analysis. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Here, the ALJ considered Dr. Tohme and Dr. Haber as treating sources. (A.R. at 24.) However, the ALJ properly noted that the treating physicians did not provide objective medical evidence to support their assessment of a limitation on sitting, lifting, or other

14

limitations required by sedentary work, which could not be accommodated by normal work breaks and lunch period associated with a typical workday.  (Id.)  Also, the ALJ was not required to consider the opinions of Dr. Haber, a podiatrist, concerning Noah's mental status or other problems not associated with impairments in her feet.  See 20 C.F.R. § 404.1513(4) (explaining that podiatrists are acceptable medical sources "for purposes of establishing impairments of the foot, or foot and ankle only").  Nonetheless, the ALJ considered Dr. Haber's assessment of Noah's inability to sit and found his statements to be contradictory.  (A.R. at 24.)  Also, the ALJ did consider Dr. Haber's assessment concerning the length of time that Noah could stand or walk during the workday.

The ALJ also noted that although Noah experienced some fatigue, her daily activities belied the extent of incapacity alleged.  The record indicates that Noah was able to (1) drive her car, (2) participate in an exercise program called "CURVES" lasting approximately thirty minutes without any asserted difficulties, (3) shop, (4) socialize with friends and family, (5) dine out regularly, and (6) perform household chores like laundry and cooking.  (A.R. at 23, 349-54.)  Therefore, the Court finds that the extent that the opinions of Noah's treating sources were unsubstantiated by medical evidence, coupled with the inconsistencies in the record, justified the ALJ's decision

to not accord them controlling weight.  The ALJ adequately considered all the evidence and provided sufficient reasons for discounting the evidence rejected in a manner consistent with the ALJ's responsibilities.

### B.   The ALJ Properly Evaluated Noah's Subjective Complaints of Pain

Noah contends that the ALJ failed to properly consider her subjective complaints of pain as required by 20 C.F.R. § 404.1529.  (Pl. Br., at 19-21.)  Noah argues that (1) participation in recreational and other activities does not preclude a finding of disability, (2) the ALJ did not adequately discuss her medications and made no mention of her husband's testimony, and (3) her testimony should have been accorded "substantial credibility" because of her 30 years of work experience.  (Id. at 19-20.)  Noah's primary subjective complaints are (1) disabling pain in her feet, (2) fatigue, (3) concentration and attention problems, and (4) forgetfulness. (Id. at 20-21.)  Noah argues that these additional problems are sufficiently disabling to prevent her from resuming even sedentary work.  (Id.)

A claimant's symptoms are considered, including complaints of pain, when making a determination of a disability.  20 C.F.R. § 404.1529(a).  The symptoms are considered to the extent they can "reasonably be accepted as consistent with the objective medical evidence and other evidence."  Id.  The ALJ has

16

discretion in weighing the credibility of a claimant when evaluating subjective complaints. Edwards v. Comm'r of Soc. Sec., 989 F.Supp. 657, 660 (D.N.J. 1998). The subjective complaints must be viewed in light of the medical evidence in the record, and objective medical evidence must support the claimant's complaints. Id. "Subjective symptomology cannot, by itself, be the basis for a finding of disability." Joyce v. Shalala, No. 94-01901, 1997 WL 998582, at *6 (D.N.J. Oct. 17, 1997); 20 C.F.R. § 404.1529(c)(2).

When a claimant complains of pain and establishes the existence of a medical impairment that could reasonably be expected to produce the pain, the ALJ must "determine the extent to which [the] claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). In making this determination, the ALJ may consider (1) daily activities; (2) the duration, frequency, location, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [the] pain or other symptoms"; (5) "treatment, other than medication . . . received for relief of [the] pain or other symptoms"; (6) any other measures used to relieve the pain or symptoms; and (7) "other factors concerning . . . functional limitations and restrictions due to pain or other

17

symptoms."  20 C.F.R. § 416.929(c)(3).  Where subjective
complaints of pain are supported by medical evidence, a
plaintiff's complaints of pain must be given "great weight" and
cannot be discounted unless contrary medical evidence exists.
Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).[1]

The ALJ considered Noah's subjective complaints of pain and
all testimony and evidence in the record.  (A.R. at 21, 23-25.)
However, the ALJ concluded that Noah's subjective complaints were
not credible to the incapacitating extent alleged.  (Id. at 23-
25.)

The ALJ found that Noah's complaints of forgetfulness were
not medically substantiated.  (Id. at 23.)  This finding is
supported by substantial evidence in the record.  The ALJ noted
that Noah had been admitted to the Valley Hospital for complaints
of disorientation in November 2003, but that she was discharged
with improvement.  (Id.)  The examining doctor, Dr. Nasr, despite
noting Noah's complaints of confusion and disorientation,
explained that "she appears to be coherent and intact" and her
mental status test was "fully normal."  (A.R. at 301.)  Although

---

[1] See Turby v. Barnhart, 54 Fed.Appx. 118, 121-22 (3d Cir.
2002) (failing to draw distinction between assessment of
plaintiff's subjective complaints of physical impairments versus
mental impairments); Rotshteyn v. Massanari, 158 F.Supp.2d 525,
533-34 (E.D. Pa. 2001) (analyzing plaintiff's subjective
complaints of physical and mental impairments under same standard
as applied to assessment of subjective complaints of physical
impairment).

Noah complained of difficulties with memory, concentration, and attentiveness, the ALJ pointed out that Noah testified that she "handles her own financial affairs, regularly uses her computer for research, writes a weekly column for the newspaper and reads mysteries and novels for enjoyment." (Id.)  Also, as Noah admitted and the documentary evidence demonstrates, she was noncompliant with her diet in connection with her diabetes.  (Id. at 152, 192, 293, 296, and 341.)  Despite becoming "spacey" when her blood sugar dropped, Noah testified that she could remedy the feeling within a few minutes by taking a glucose pill.  (Id. at 338-40.)

The ALJ also found Noah's continued activity level, which included an exercise regimen consisting of both aerobic and strength training, performing a variety of household chores, writing a newspaper column, attending movies, and frequently dining out, was not consistent with the degree of incapacitation asserted.  (Id. at 23.)  Contrary to Noah's assertion and as described above, the ALJ can consider, inter alia, her daily activities in determining the severity of subjective complaints. The ALJ noted that Noah's daily activities undermined her assertions of severe disabling pain, forgetfulness, and difficulties with attention and concentration.  (Id.)  Further, although the ALJ acknowledged that Noah might experience some fatigue, the ALJ determined that the need for rest could be accommodated within the normal breaks and lunch time inherent in

19

a typical work day.  (Id. at 24.)  The ALJ thoroughly evaluated the available testimonial and documentary evidence, and the findings are supported by substantial evidence in the record.

As to Noah's contention that there was no true discussion of her medications or her husband's testimony, the ALJ is not required to engage in an exhaustive discussion of all the evidence.  Hernandez, 89 Fed.Appx. at 773-74.  Instead, the ALJ was required to evaluate the evidence in the record in a manner consistent with the regulations and case law.  Fargnoli, 247 F.3d at 42.  The ALJ specifically stated that he considered all testimony presented at the hearing.  (A.R. at 21.)  Moreover, the Court does not find that Noah's husband provided "compelling testimony."  (Pl. Br., at 20.)  Noah's husband's testimony consisted of (1) reinforcing Noah's statements that she has difficulty walking and experiences pain while doing so, and (2) stating that his wife was forgetful.  (A.R. at 356-60.)

The ALJ fully considered the relevant evidence concerning Noah's subjective complaints.  The ALJ did not limit the analysis to whether there were objective medical findings supporting the subjective complaints.  However, the ALJ did evaluate the lack of supporting objective evidence with Noah's daily activities in finding that her complaints were not "credible to the incapacitating extent alleged."  (A.R. at 23.)  Accordingly, the ALJ's decision is supported by substantial evidence and the ALJ

did not err in not according "great weight" to Noah's subjective complaints.

## C. The ALJ Sufficiently Assessed Noah's Nonexertional Limitations and was not Required to Obtain the Testimony of a Vocational Expert.

Noah also claims that the ALJ failed to obtain the testimony of a vocational expert to assess her nonexertional limitations on her ability to perform her past work.  (Pl. Br., at 17.)  Noah notes that Dr. Tohme and Dr. Haber opine that her symptoms would frequently affect her attention and concentration.  (Id.; A.R. at 281, 288.)  Noah argues that her "complaints of concentration and memory problems, fatigue, and depression have been consistent ever since [she] began her claim . . . on October 9, 2002."  (Pl. Br., at 18.)  Noah asserts that "[a] vocational expert is needed in the matter at hand to assess whether such limitations would affect [her] ability to do her past work, or erode the occupational workforce."  (Id. at 19.)  As such, Noah claims that the Court should remand the case for an appropriate vocational analysis.  (Id.)

If an ALJ addresses "the issue [of] whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, [the ALJ] may use the services of a vocational

21

expert or other specialist." 20 C.F.R. § 1566(e).[2]  The ALJ has
the discretion to "use a vocational expert or other specialist."
Id.  Thus, if an individual is restricted to sedentary work with
additional nonexertional limitations the ALJ may need the
assistance of a vocational expert to "determin[e] the
significance of the remaining occupational base of unskilled
sedentary work in more difficult cases."  Soc. Sec. Rul. 83-14.
The mere existence of a nonexertional impairment does not
automatically require a vocational expert; an ALJ need only hear
a vocational expert's testimony or other similar evidence when
the nonexertional limitation significantly diminishes the
claimant's ability to work.  Bapp v. Bowen, 802 F.2d 601, 603 (3d
Cir. 1986).

　　Noah complained of, inter alia, fatigue, mental incoherence,
depression, and headaches.  (Pl. Br., at 17.)  The ALJ determined
at step four that Noah could return to her past relevant work as
a media placement specialist.  (A.R. at 24.)  The ALJ stated that
Noah's subjective complaints were evaluated in accordance with 20
C.F.R. § 404.1529 and Soc. Sec. Rul. 96-7p but, as discussed
above, found that the complaints were not credible to the extent
alleged because her activity level "tends to belie the degree of

---

[2] Contrary to the Commissioner's apparent contention, the
ALJ may "use the services of vocational experts or vocational
specialists" in analyzing whether a claimant can perform past
relevant work given the claimant's RFC.  20 C.F.R. §
404.1560(b)(2).

incapacitation alleged." (Id. at 23.)  The ALJ analyzed Noah's

RFC and determined that she had the capacity to perform sedentary

work.  (Id. at 23-24.)  The ALJ found that her past work as a

media placement specialist did not require any functional

activities that would be precluded by her impairments and

limitations.  (Id. at 24.)  The Court finds that the ALJ

sufficiently assessed Noah's nonexertional limitations, and did

not commit an abuse of discretion in not obtaining a vocational

expert.[3]

> The Court notes that an ALJ must
>
> do three things in connection with determining whether a
> claimant's RFC enables him [or her] to return to PRW
> [(past relevant work)].  First, an ALJ must make specific
> findings of fact regarding a claimant's ability to
> perform PRW.  Second, an ALJ must make findings regarding
> the physical and mental demands of the PRW.  Finally, an
> ALJ must compare the requirements of the claimant's PRW
> to the claimant's RFC and assess whether the claimant has
> the capability to perform [the] PRW.

Kirk v. Comm'r of Soc. Sec., No. 05-2942, 2006 WL 839026, at *3

(3d Cir. Mar. 31, 2006).  The claimant has the burden to

demonstrate that he or she cannot perform past relevant work.

Id.  Here, the ALJ properly carried out the obligations regarding

Noah's past relevant work.  The ALJ described the requirements of

---

[3] The Court notes that the ALJ must use a vocational expert
or a Social Security Ruling at Step Five to analyze the impact of
nonexertional impairments on the occupational base.  Allen v.
Barnhart, 417 F.3d 396, 406 (3d Cir. 2005).  Noah has not cited
to any case law applying this requirement's to an ALJ's analysis
at Step Four.

Noah's past work as a media placement specialist, and compared her RFC with those requirements.  The Court further finds that the ALJ's decision was supported by substantial evidence as the ALJ properly evaluated Noah's subjective complaints and the medical evidence in the record, and explained that none of Noah's impairments would preclude her from performing the past relevant work.

**<u>CONCLUSION</u>**

The Court, finding that the Commissioner's decision was supported by substantial evidence, will therefore affirm the Commissioner's denial of Noah's claim.  The Court will issue an appropriate order.


                                    s/ Mary L. Cooper
                                 **MARY L. COOPER**
                                 United States District Judge